## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DWAYNE KILLIAN,

      Plaintiff,

v.

SERGEANT EDWARD GRIZZLE, DEPUTY
CHIEF ROBERT BROWN, SERGEANT
RAUL ALVAREZ, OFFICER RYAN SHAW,
and CHIEF WILLIAM EVANS,

      Defendants.

Case No. 23 C 3741

Hon. LaShonda A. Hunt

### MEMORANDUM OPINION AND ORDER

Defendant Sergeant Edward Grizzle of the Joliet Police Department arrested Plaintiff Dwayne Killian for alleged theft of department property on June 14, 2022. After the arrest, Defendant Chief William Evans advised Sgt. Grizzle to release Killian from custody pending further investigation. Killian filed this lawsuit a year later, alleging five counts of false arrest— one against each Defendant—in violation of his Fourth Amendment rights. Defendants have all moved for summary judgment. (Dkt. 21). For the reasons discussed below, summary judgment is denied as to Sgt. Grizzle and granted as to all other defendants.

### BACKGROUND

Killian was a police officer in Joliet, Illinois until his retirement in 2016. (Defs.' Statement of Facts at 264[1], Dkt. 23; Pl.'s Resp. to Defs.' Statement of Facts at 285, Dkt. 25-1).[2] From 2008

---

[1] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer.

[2] Plaintiff failed to comply with Local Rule 56.1(e)(1) which required him to set forth the text of the asserted fact and then the response. For ease of reference, the Court refers to both sides' Local Rule 56.1 filings by docket number. Counsel is reminded that future noncompliant filings may be summarily stricken.

until 2016, Killian was the Deputy Director of the Tri-County Auto Theft Task Force ("TCAT"). (Dkt. 23 at 265; Dkt. 25-1 at 285). TCAT is a multi-jurisdictional authority with a primary purpose to engage in law enforcement activities related to auto theft and auto theft insurance crimes. (*Id.*). As part of its responsibilities, TCAT is authorized to seize property used in the commission of the criminal offenses it investigates. (*Id.*).

On July 1, 2019, Sgt. Grizzle was appointed as the TCAT Director and held that position until January 2024. (Dkt. 23 at 265; Dkt. 25-1 at 286). As Director, Sgt. Grizzle was responsible for TCAT's daily operations, direction, and supervision of its personnel. (*Id.*). In 2021, TCAT employed Killian in a post-retirement position as the TCAT Administrative Director, which was a non-sworn, civilian, part-time position under the supervision of the TCAT Director, *i.e.*, Sgt. Grizzle. (Dkt. 23 at 266; Dkt. 25-1 at 286).

TCAT once stored seized property in a locked area inside a large warehouse located at an abandoned steel mill in Joliet. (*Id.*). During this time, Killian and Sgt. Grizzle went to the steel mill together to inventory the items there. (Defs.' Resp. to Pl.'s Statement of Facts at 326-327, Dkt. 27). In early 2021, the owner of the steel mill informed Killian that the mill would be demolished and TCAT's property (the "TCAT Property"), which included a forklift, needed to be relocated. (Dkt. 27 at 327). Sgt. Grizzle advised Killian that TCAT had no money in the budget to pay for storage, so Killian obtained permission to temporarily store the TCAT Property at a wastewater treatment plant in Joliet. (*Id.*).

In April or May of 2021, Nick Gornick, an employee of the City of Joliet, advised Killian that TCAT needed to move its property out of the wastewater plant by October of 2021. (*Id.* at 328). Killian informed Sgt. Grizzle of the situation, and in response, Sgt. Grizzle again advised that TCAT had no money in the budget for storage. (*Id.*). Once October came, Killian told Sgt.

Grizzle at a sports bar that he planned to move the TCAT Property from the wastewater plant to Killian's house for storage. (*Id.* at 329). Killian told Sgt. Grizzle that TCAT could acquire the property from him upon request. (*Id.*).

Sgt. Grizzle first inquired about the TCAT Property months later, in April or May 2022. (Dkt. 23 at 268; Dkt. 25-1 at 288). Killian told Sgt. Grizzle he was storing the property at Killian's residence. (*Id.*). Sgt. Grizzle requested the forklift's return without specifying a deadline, stating, "hey Dwayne, can you bring the forklift back here?" (Dkt. 27 at 329). On May 26, 2022, Sgt. Grizzle emailed Killian instructions to contact Clinton Auto Auction regarding TCAT's plan to auction the property. (Dkt. 23 at 269; Dkt. 25-1 at 288).

From late May to early June, Killian was absent due to a fishing trip and attendance at a funeral. (Dkt. 23 at 269; Dkt. 25-1 at 288-289). The parties disagree about whether Sgt. Grizzle, as Killian's supervisor, was aware of these absences. (*Id.*). Neither disputes, though, that on June 7, 2022, Sgt. Grizzle requested the forklift's return and Killian agreed to do so. (Dkt. 27 at 330).

Finally, on the morning of June 14, 2022, Sgt. Grizzle asked Killian if he had returned the forklift, to which Killian responded that because it was a hundred degrees outside, he would load it up at night and return it the next morning, *i.e.*, the morning of June 15, 2022. (*Id.*). Nevertheless, on June 14, 2022, Sgt. Grizzle made a report indicating that Killian had committed theft of the TCAT Property, suspended Killian, and—after ordering two officers to give him a ride home to return the TCAT Property—arrested Killian for theft of the forklift. (*Id.* at 330-331). It is undisputed that on June 14, 2022, Killian returned a trailer, forklift, and air compressor belonging to TCAT, and additional TCAT property along with a 1980 Harley motorcycle on June 18, 2022. (*Id.* at 331).

Upon the advice of Chief Evans, Sgt. Grizzle released Killian from custody pending investigation. (Dkt. 23 at 272; Dkt. 25-1 at 290). Sgt. Grizzle then turned the case over to the Illinois Attorney General's Office to ensure an independent agency handled the matter. (Dkt. 23 at 272; Dkt. 25-1 at 291). At the time of his deposition for this matter, no formal charges were filed against Killian. (Killian Dep. at 104, Dkt. 22-1).

A little less than a year later, on May 31, 2023, Killian filed this lawsuit in state court alleging that Defendants violated his Fourth Amendment rights by arresting him without probable cause. (Compl., Dkt. 1-1). Defendants removed the case to federal court two weeks later asserting federal question jurisdiction. (Notice of Removal, Dkt. 1). Following discovery, Defendants filed a motion for summary judgment. (*See* Mot., Dkts. 21, 22). That motion is fully briefed and ripe for review.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the (non-movant's) position will be insufficient; there must be evidence on which the jury could reasonably find for the (non-movant)." *Anderson,* 477 U.S. at 252.

## DISCUSSION

As an initial matter, Killian concedes that all defendants except Sgt. Grizzle are entitled to qualified immunity. (Opp'n at 283, Dkt. 25) ("Plaintiff does not dispute that all other Defendants, with the exception of EDWARD GRIZZLE, are entitled to qualified immunity.") (emphasis in original). He has therefore abandoned and waived his claims against them. *C&N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014) (finding that nonmovant's failure to make an argument in response to summary judgment constituted waiver). Accordingly, the Court grants summary judgment for defendants Brown, Alvarez, Shaw, and Evans.

Turning to the remaining defendant, Sgt. Grizzle, he argues that summary judgment is warranted because he had probable cause to arrest Killian for theft; but even if he did not, he is also entitled to qualified immunity. (Mot. at 74-81, Dkt. 22). As explained below, the Court finds triable fact issues exist as to probable cause and qualified immunity such that summary judgment for Sgt. Grizzle must be denied.

## I.      Probable Cause

To prevail on his Fourth Amendment claim for false arrest, Killian must show that he was arrested without probable cause. *Gaddis v. Demattei*, 30 F.4th 625, 630 (7th Cir. 2022). "Probable cause for an arrest provides an absolute defense to a false arrest claim." *Id.* "'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical;

they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). The officer's belief need not be "'correct or even more likely true than false, so long as it is reasonable.'" *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012) (quoting *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999)).

The Seventh Circuit instructs that an officer's reasonable belief must be more than a "hunch," but less than a finding that, more likely than not, the arrestee committed a crime. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). The Supreme Court has further described probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" *Gates*, 462 U.S. at 232. Probable cause "depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "The principal component[] of a determination of . . . probable cause will be the events which occurred leading up to the . . . [arrest], and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996). Notably, "[d]etermining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Abbott*, 705 F.3d at 714. Based on his experience, an officer may draw inferences in determining whether probable cause exists. *Ornelas*, 517 U.S. at 700.

"Federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782

6

(7th Cir. 2001). Relevant here, under 720 ILCS 5/16-1(a), "[a] person commits theft when he knowingly . . . [o]btains or exerts unauthorized control over property of the owner; . . . [and] intends to deprive the owner permanently of the use or benefit of the property[.]" Sgt. Grizzle contends that even if Killian "was implicitly authorized" to possess the TCAT Property, his feet dragging in returning the property—despite multiple orders—constitutes probable cause for theft. (Mot. at 78). Killian counters that because Sgt. Grizzle implicitly authorized Killian to store or control the TCAT Property with no specific instructions or deadline for return, there is a genuine issue of material fact concerning whether Sgt. Grizzle had probable cause to arrest Killian for theft. (Opp'n at 279-280). The Court concludes that Killian has the better argument, and it is for the jury to decide if the evidence supports a reasonable belief that Killian exercised unauthorized control with intent to permanently deprive TCAT of its property.

"While the term 'unauthorized' is not defined for purposes of theft, the definition of 'owner' sheds some light on when control will be authorized." *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 218. "'[O]wner' means a person, other than the offender, who has possession or any other interest in the property involved, even though such interest or possession is unlawful, and *without whose consent the offender had no authority to exert control over the property*." 720 ILCS 5/15-2 (emphasis added). Put another way, "the issue of unauthorized control depends on the scope of . . . the authority given . . . by the property's owner." *Ogelsby*, 2016 IL App (1st) 141477, at ¶ 218.

"In the context of employees accused of theft, whether the employee's conduct is authorized hinges on the scope of the employee's authority." *Id.* at ¶ 219. For example, when a government employee uses government property for private purposes, the use may be beyond the scope of the employee's lawful authority when the property is authorized for governmental

purposes within the scope of employment only. *See People v. Hajostek*, 49 Ill. App. 3d 148, 149-152 (3d Dist. 1977). However, when the government's rules are unclear on whether the use of property for certain purposes is prohibited, an employee's control over government property for those purposes may not necessarily amount to unauthorized control. *See People v. Lewandowski*, 43 Ill. App. 3d 800, 804-805 (2d Dist. 1976).

Illinois law is clearer on what it means to "permanently deprive" a property owner of their property in the context of a theft. To "permanently deprive" means to, in relevant part, "[d]efeat all recovery of property by the owner" or "[d]eprive the owner permanently of the beneficial use of the property." 720 ILCS 5/15-3(a)-(b); *see also People v. Perry*, 864 N.E.2d 196, 210-211 (Ill. 2007) (finding that use of property by deception amounts to permanent deprivation). "Whether a defendant intends to deprive the owner permanently of the use or benefit of the property is determined only by the defendant's actions (intended or performed) toward the owner's property." *People v. Carby*, 2022 IL App (4th) 190677-U, ¶ 32 (quotes omitted).

"The knowledge and intent necessary for a theft charge need not be proven by direct evidence and may, instead, be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 32. "Evidence of intent to permanently deprive the owner of property is usually circumstantial, including inferences drawn from the facts and circumstances as well as 'the act of theft itself.'" *People v. Moore*, 2021 IL App (1st) 172811, ¶ 205 (quoting *People v. Kotero*, 2012 IL App (1st) 100951, ¶ 31). Thus, the requisite intent to permanently deprive "may ordinarily be inferred when a person takes the property of another," particularly "when the owner of the property is a stranger to the accused." *People v. Veasey*, 251 Ill. App. 3d 589, 592 (2d Dist. 1993). "Concealment of property and fraudulent or deceptive acts are also circumstances supporting an

inference of an intent to permanently deprive." *Carby*, 2022 IL App (4th) 190677-U, ¶ 33. "Intent may also be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner could recover it." *Kotero*, 2012 IL App (1st) 100951, ¶ 31.

Viewing the totality of the circumstances from the standpoint of an objectively reasonable police officer, the events preceding Sgt. Grizzle's June 14, 2022 arrest of Killian establish that a reasonable juror could find that the known facts did not support a finding that a crime had been committed and consequently, probable cause for the arrest existed. The undisputed facts in the record are that in early 2021, after the steel mill's owner informed Killian that the TCAT Property needed relocation, the property was temporarily moved to the Joliet wastewater treatment plant. (Dkt. 27 at 327). Sgt. Grizzle advised Killian there was no budget for storage elsewhere. (*Id.* at 327-328). Around April or May 2021, a city of Joliet employee told Killian that the property needed to be removed from the wastewater plant by October 2021. (Dkt. 23 at 266-267; Dkt. 25-1 at 286). And in October of that year, after Sgt. Grizzle reiterated the lack of a storage budget, Killian stated he would store the property at Killian's home until Sgt. Grizzle requested its return. (Dkt. 27 at 328-329).[3]

Over six months later, in April/ May 2022, Sgt. Grizzle inquired about the TCAT Property, and in response, Killian confirmed he was still storing it at his home. (Dkt. 23 at 268; Dkt. 25-1 at 288). Sgt. Grizzle apparently asked for the forklift back but neglected to specify a deadline for its return. (Dkt. 27 at 329). On May 26, 2022, Sgt. Grizzle emailed Killian to contact Clinton Auto Auction regarding the planned auction of the TCAT Property. (Dkt. 23 at 269; Dkt. 25-1 at 288).

---

[3] According to Sgt. Grizzle's Local Rule 56.1 statement, "Killian never asked for permission from . . . Grizzle to store [the TCAT Property] at his personal residence." (Dkt. 23 at 267). However, Sgt. Grizzle later admits in his response to Killian's Local Rule 56.1 statement of additional facts that Killian told him that he was going to store the TCAT Property from the wastewater plant at Killian's home and that Sgt. Grizzle could ask for it back whenever he wanted. (Dkt. 27 at 328-329).

On June 7, 2022, Grizzle told Killian to return the forklift, and Killian agreed, though the parties quibble over whether this was an "order" or a "request." (Dkt. 23 at 269; Dkt. 25-1 at 288; Dkt. 27 at 330). Either way, nothing in the record suggests that Killian objected to giving any of the TCAT property back.

Finally, a week later, on June 14, 2022, when Sgt. Grizzle asked if the forklift had been returned, Killian explained that he would load it at night due to extreme heat and return it the following morning. (Dkt. 27 at 330). Apparently dissatisfied with that response, Sgt. Grizzle reported Killian for theft, suspended him, and after arranging for officers to transport Killian home to retrieve the property, arrested him for theft of the forklift. (*Id.* at 330-331).

Considering the totality of the circumstances, the Court finds a dispute of material fact regarding whether an objectively reasonable police officer would have grounds to believe Killian committed theft of the TCAT Property, for two reasons. First, a genuine dispute of material fact exists regarding whether Sgt. Grizzle reasonably believed Killian was unauthorized to control the TCAT Property when arrested on June 14, 2022. It is undisputed that Killian informed Sgt. Grizzle he would store the property at Killian's home due to the lack of alternatives, and Sgt. Grizzle does not point to any evidence in the record that he offered another solution or even objected to this proposal. In other words, as TCAT Director, Sgt. Grizzle effectively authorized this storage until at least April or May 2022, when he requested the property's return without specifying a deadline. Similar to *Lewandowski*, where "uncertainty [in] the rules governing disposal of property" undermined a theft charge, TCAT and Sgt. Grizzle's directions regarding Killian's control over the property were ambiguous at best. *Lewandowski*, 43 Ill. App. 3d at 806. Moreover, Sgt. Grizzle has not presented evidence suggesting he believed Killian was using the TCAT Property while stored at Killian's home. Viewing facts and inferences in Killian's favor, a reasonable juror could

conclude Sgt. Grizzle lacked reasonable grounds to believe Killian exercised "unauthorized control" over the property before his arrest.

Second, a genuine dispute exists regarding whether Sgt. Grizzle reasonably believed Killian intended to permanently deprive TCAT of its property. After Sgt. Grizzle confirmed that no budget existed for storage, Killian offered to store the property at his residence until Sgt. Grizzle requested to return it. The record does not reflect that Killian deceived or misled Sgt. Grizzle about the property's location. The only evidence potentially supporting reasonable grounds for believing that Killian intended permanent deprivation was his delay in returning the property when requested in April or May 2022. However, on the morning of June 14, 2022—the day of the arrest—Killian explicitly informed Sgt. Grizzle of his plan to return the property the following day due to the weather. Viewing these facts most favorably to Killian, a reasonable juror could conclude that Sgt. Grizzle lacked reasonable grounds to believe Killian intended to permanently deprive TCAT of its property.

Sgt. Grizzle cites *Williamson v. Curan*, 714 F.3d 432 (7th Cir. 2013), for the proposition that the crime of theft is not limited to the original taking of property but also covers refusal to return property. (Mot. at 76) (citing *Williamson*, 714 F.3d at 444). In *Williamson*, the plaintiff was arrested alongside her husband for horse theft and later acquitted. *Williamson*, 714 F.3d at 435. After filing a wrongful arrest lawsuit against sheriff's deputies, the trial court dismissed her case at the pleading stage. *Id.* On appeal, the Seventh Circuit affirmed for two reasons. First, though the plaintiff's limited role "might have led deputies not to seek an arrest warrant," the deputies did not investigate her role and thus did not know probable cause was lacking. *Id.* at 447. Second, despite the plaintiff having a potential stable keeper's lien on the horse (a "legitimate, legal ground" to assert control), *id.* at 447-448, the deputies were unaware of this claim because the

horse owners told them otherwise. *Id.* at 448. The Seventh Circuit concluded that the deputies reasonably believed the horse was wrongfully possessed and had probable cause to arrest the plaintiff for her husband's refusal to return it. *Id.*

*Williamson* is readily distinguishable from this case. While the arresting officers in *Williamson* were unaware of the plaintiff's role and potential property right, here the undisputed facts are that Sgt. Grizzle—who personally arrested Killian (Dkt. 27 at 331)—knew before the arrest that: (1) Killian was storing the TCAT Property at home due to TCAT's lack of storage budget; and (2) Killian planned to return the property on June 15, 2022. Unlike *Williamson*, where officers were misled and unaware of facts undermining probable cause, the Sgt. Grizzle was fully informed about information suggesting probable cause for a theft arrest may have been lacking.[4]

In sum, the Court finds that in light of these disputed material facts, summary judgment is not appropriate here.

## II.   Qualified Immunity

Sgt. Grizzle nonetheless argues that even if the Court finds triable facts exist as to probable cause, he is entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

_____

[4] Sgt. Grizzle also cites *Burns v. Vill. of Crestwood*, No. 12-CV-484, 2016 WL 946654, at *7 (N.D. Ill. Mar. 14, 2016), for the same proposition. However, *Burns* is factually inapposite to the situation here. In that case, the plaintiff had signed a restitution agreement that stated he could be arrested for theft if he did not pay back a sum owed to a victim by a certain date. *Id.* He was then for failure to abide by that agreement. *Id.* As such, the court found that "[a] reasonable officer in Defendants' position would have believed that once Burns missed the deadline for paying back the Cozzos, Burns was exerting unauthorized control over the Cozzos' money with the intent to deprive them of the money." *Id.* In other words, the plaintiff in *Burns* had a firm deadline to return property to the owner and was arrested for failure to abide by the agreement. In contrast, here, Killian had no specified deadline to act, and in fact, on the morning of his arrest, informed Sgt. Grizzle that he would return the forklift the next morning. A reasonable juror could find that an officer in Sgt. Grizzle's position would not have believed that his employee of many years, Killian, was exercising unauthorized control with intent to deprive TCAT of its property on June 14, 2022.

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (quotes omitted). The Supreme Court has mandated a two-part analysis for assessing government officials' claims of qualified immunity claims, which can be assessed in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A court must decide whether the facts as shown by the plaintiff adequately make out a violation of a constitutional right. *Id.* at 232-236. The court must also decide whether the right at issue was "clearly established" at the time of officer's alleged misconduct. *Id*. at 232-236.

"The contours of the constitutional right that [Sgt. Grizzle] allegedly violated here—the right to be free from arrest without probable cause—were clearly established when the events in question took place." *Jones v. Clark*, 630 F.3d 677, 682 (7th Cir. 2011) (citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006); *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Accordingly, the only question before [the Court] is whether, under [Killian's] version of events, [Sgt. Grizzle] violated th[is] clearly established right[]." *Id.*

Sgt. Grizzle asserts that he is protected by qualified immunity from Killian's Fourth Amendment claim relating to the arrest because a reasonable officer could "believe that when an employee, such as Killian, fails to follow four commands to bring back the employer's property, and does not even give a time when he will bring that property, then there is probable cause to arrest that person for theft." (Mot. at 81). Further, Grizzle argues that even if he in fact lacked probable cause, he is entitled to qualified immunity because he had "arguable probable cause." (*Id.* at 80). *See Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) ("Arguable probable cause exists when a reasonable police officer in the same circumstances and with the same knowledge . . . could have reasonably believed that probable cause existed in light of well-established law.") (quotes omitted).

Sgt. Grizzle's argument, however, presumes the truth of his version of events, which the Court has already found could be interpreted by a reasonable jury in an alternate way. And because these material fact disputes are inappropriate for resolution on summary judgment, they also preclude a finding of qualified immunity at the summary judgment stage. *See Jones*, 630 F.3d at 685 (upholding denial of qualified immunity where officers and plaintiff disputed facts that went to establishing probable cause). Indeed, Sgt. Grizzle's contentions are contradicted by his own response to Killian's statement of facts, where he admits that on June 14, 2022, Killian told him he planned to return the TCAT forklift the following morning. (Dkt. 27 at 330). Immunity would not attach if—as Killian argues—Sgt. Grizzle never truly believed Killian was unauthorized to control the TCAT Property up until his arrest or did not intend to return the TCAT Property. (*See* Opp'n at 280-282). In short, if the trier of fact were to credit Killian's version of events, Sgt. Grizzle could have no arguable grounds for probable cause to arrest Killian for theft. *See Dyson v. Vill. of Midlothian*, No. 12-cv-7632, 2015 WL 778850, at *9 (N.D. Ill. Feb. 18, 2015) (declining to grant qualified immunity where disputes of material fact concerning probable cause remained). Accordingly, the Court declines to grant Sgt. Grizzle qualified immunity arising from the arrest of Killian.

## **CONCLUSION**

For all the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment. Summary judgment is granted in favor of Defendants Brown, Alvarez, Shaw, and Evans on Counts II, III, IV and V (false arrest claims). Summary judgment is denied as to Defendant Grizzle on Count I (false arrest claim).

**DATED**: May 15, 2025                    **ENTERED**:

LaShonda A. Hunt
United States District Judge

15